UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JENNIFER A.,

                                **Plaintiff,**

vs.                                                                 1:22-CV-1167
                                                                                 (MAD)

**COMMISSIONER OF SOCIAL SECURITY,**

                                **Defendant.**
_____

**APPEARANCES:**                                       **OF COUNSEL:**

**THE LAW OFFICES OF STEVEN**         **STEVEN R. DOLSON, ESQ.**
**R. DOLSON PLLC**
6320 Fly Road – Suite 201
East Syracuse, New York 13057
Attorney for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**    **JASON P. PECK, ESQ.**
6401 Security Boulevard
Baltimore, Maryland 21235
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On August 3, 2020, Plaintiff Jennifer A. filed applications for Supplemental Security Income and Social Security Disability Insurance Benefits. *See* Dkt. No. 8, Administrative Transcript ("Tr.") at 12, 257-73. On November 3, 2020, and March 10, 2021, Plaintiff's claims were denied. *See id.* at 143-50, 159-82. Plaintiff made a timely request for a hearing before Administrative Law Judge ("ALJ") Michelle S. Marcus, who issued an unfavorable decision on September 20, 2021. *See id.* at 12-28. Plaintiff made a request to review the unfavorable

decision, and on September 16, 2022, the Appeals Council denied Plaintiff's request for review. *See id.* at 1-5.

On November 8, 2022, Plaintiff timely commenced this action pursuant to 42 U.S.C. § 405(g) seeking review of the Commissioner's unfavorable decision. *See* Dkt. No. 1. Plaintiff submitted a brief arguing that the ALJ's Residual Functional Capacity ("RFC") determination is not supported by substantial evidence because the ALJ failed "to consider and articulate the most important factors of supportability and consistency in determining the persuasiveness of medical source statements of record." *See* Dkt. No. 9 at 1. Defendant argues the contrary. *See* Dkt. No. 11. For the reasons set forth below, the Commissioner's decision is affirmed.

## II.  BACKGROUND

Plaintiff was born on April 26, 1979. *See* Tr. at 40. Plaintiff attended school through the twelfth grade, became a General Practice Nurse, and then obtained a license to be a Licensed Practical Nurse ("LPN"). *See id.* at 74, 289. Plaintiff was an LPN at Community Work & Independence from 2005 to 2014 where she worked as a "float nurse." *Id.* at 75. Plaintiff would complete paperwork, perform patient care, and administer treatment. *See id.* at 75-76.

Plaintiff alleged that she could not work because of "hip issues," anxiety, depression, and Crohn's disease. Tr. at 288. Plaintiff testified that she did not drive long distances but would drive five-to-ten minutes to aqua therapy and to pick up her prescriptions. *See id.* at 50. Therapy helped her flexibility. *See id.* at 59. However, she could not bear weight or tolerate ambulation because of her pain. *See id.* at 60. She also experienced "pinches" in her groin and back when sitting for any extended length of time, standing, or walking. *Id.* at 64. If she sat for too long, she had to reposition herself and usually repositioned every fifteen minutes. *See id.* Plaintiff used a

cane for long distances or when she woke up in pain. *See id.* at 65. She did light chores, made dinner, and took a nap every day. *See id.* at 66-67, 70.

### III. DISCUSSION

**A.      Standard of Review**

A person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that [s]he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in h[er] prior type of work, the Commissioner must find h[er] disabled if (5) there is not another type of work the claimant can do."

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (alteration in original) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)). "The claimant bears the burden of proof on the first four steps, while the [Social Security Administration] bears the burden on the last step." *Id.* (citation omitted).

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court examines the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). "Substantial

evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

**B.     The ALJ's Decision**

At the first step of the sequential analysis, the ALJ found that Plaintiff met the insured status requirement of the Social Security Act through March 21, 2020, and that she had not engaged in substantial gainful activity since March 5, 2019, the amended alleged onset date. *See* Tr. at 15. At step two, the ALJ concluded that Plaintiff had "the following severe impairments: avascular necrosis with bilateral hip surgeries; stress fractures of the sacrum; and lumbar spondylosis without myelopathy or radiculopathy." *See id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that functionally equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 18.

At step four, the ALJ found that Plaintiff had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can lift, carry, push, pull ten pounds occasionally and five pounds frequently. The claimant can sit for 6

> hours in an 8-hour workday with regular breaks. She can stand and walk for thirty minutes uninterrupted for a daily total of 2 hours. If required to walk more than ten minutes uninterrupted, the individual will require the use of a single cane. The claimant can perform work that allows for a sit/stand option every sixty minutes, to either move within the seat or stand at the workstation for two minutes, which would not result in being off task. The claimant could perform work where walking is performed only on even surfaces (i.e., no walking on uneven surfaces). The claimant can perform the balancing required to perform this level of ambulation but cannot perform the balancing required to walk on a narrow beam, and there is to be no climbing of ladders, ropes or scaffolds, no exposure to unprotected heights, and no operation of dangerous machinery. She can occasionally climb ramps but can only climb stairs 10% of the workday. She can occasionally bend at the waist. She can crouch 10% of the workday but may need to hold on to an object to rise. She can perform work that requires no kneeling or crawling. The claimant will be off-task 5% of the workday and will be either tardy to or absent from work on an unscheduled basis combined, a total of eight times a year.

*Id.* at 19. In reaching her decision, the ALJ considered a number of medical opinions. In relevant part, ALJ Marcus first concluded that a report from disability determination examiner ("DDE") M. Juriga, Ph.D., was not persuasive because more detailed records were provided following Dr. Juriga's opinion. *See* Tr. at 24. The ALJ determined that an opinion from DDE S. Bhutwala, Ph.D., was persuasive because although Dr. Bhutwala did not examine Plaintiff, Dr. Bhutwala reviewed the record and determined that Plaintiff "had mild restrictions to understanding, remembering, applying information, interacting with others, concentrating, persisting, maintaining pace, adapting, or managing herself. This assessment was generally consistent with the record given the lack of mental health data and treatment available." *Id.* at 25. The ALJ then discussed an opinion from consultative examiner Patricia Cameron, Ph.D. *See id.* at 25-26. ALJ Marcus explained,

> Dr. Cameron opined the claimant had no limitation in understanding, remembering, or applying simple or complex

5

> directions and instructions, or in her ability to use reason and judgment to make work-related decisions. She had moderate limitation in interacting adequately with supervisors, coworkers, and the public. She had moderate limitation sustaining concentration and performing a task at a consistent pace as well as sustaining an ordinary routine and regular attendance at work. She had mild to moderate limitation in regard to regulating emotions, controlling behavior, and maintaining wellbeing. She had no limitation in maintaining personal hygiene and appropriate attire, and no limitation in awareness of normal hazards and taking appropriate precautions. These restrictions were based [on] a onetime evaluation of the claimant. Further, they were internally inconsistent due the results of the claimant's attention and concentration evaluation in comparison to the moderate restriction noted in Dr. Cameron's opinion. In addition, she did not demonstrate behaviors that would indicate issues with her ability to regulate emotions on the examination. This restriction seems to be based on subjective statements only rather than the claimant's presentation or interactions. Further, the examination did not indicate issues with the claimant's ability to interact, but she was noted with moderate social interaction limitations. The mental status examination did not comport with this nor did the other evidence in record, showing she related well. At most, some mild limitations with interaction and concentration. Further, given her results on the examination no understanding or memory limitations were supported. Overall, this assessment was persuasive as to the lack of restriction to understanding, remembering, and applying simple or complex directions, as that was based upon the results of the examination. Otherwise, it is not persuasive.

*Id.* at 25-26 (citation omitted).

At step five, relying on the testimony of a vocational expert, the ALJ found that although Plaintiff was not capable of performing past work, she was capable of performing other work in the national economy. *See* Tr. at 26-27. Accordingly, the ALJ determined that Plaintiff was not disabled, as defined in the Social Security Act, during the relevant time period. *See id.* at 28.

**C.   Analysis**

Plaintiff contends that the ALJ erred in considering the medical opinions related to Plaintiff's mental health because the ALJ (1) did not discuss the opinions' consistency and

supportability and (2) concluded that Plaintiff had only a mild limitation in interacting with others and did not include any related limitation in Plaintiff's RFC. *See generally* Dkt. No. 9. Defendant argues that the ALJ appropriately reviewed the medical opinions according to the factors set forth in 20 C.F.R. §§ 404.1520c and 416.920c. *See generally* Dkt. No. 11.

**D.     ALJ's Review of Medical Opinions Concerning Plaintiff's Mental Health**

For claims filed on or after March 27, 2017, such as this one, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ will evaluate the persuasiveness of medical opinions and prior administrative medical findings using the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion or prior administrative medical finding. *See id.* §§ 404.1520c(c), 416.920c(c). Of those, the "factors of supportability . . . and consistency . . . are the most important factors." *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2); *see also Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, *1 (2d Cir. June 17, 2022).

The regulations define the supportability factor as follows: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor is defined as: "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* §§ 404.1520c(c)(2), 416.920c(c)(2).

Here, ALJ Marcus did not use the words "supportability" and "consistency" each time she reviewed the three medical opinions at issue. *See* Tr. at 24-26. However, the ALJ discussed what each of the doctors relied on in coming to their conclusions and whether that increased the persuasiveness of the opinions. ALJ Marcus also noted that Dr. Juriga's opinion was not persuasive because of subsequent, more detailed records, Dr. Bhutwala's opinion "was generally consistent with the record given the lack of mental health data and treatment available," and Dr. Cameron's opinion "did not comport with [her examination] nor did the other evidence in record." *Id.* at 24-26. This is sufficient for the Court to glean the ALJ's rationale as to the supportability and consistency factors. *See Eric G. v. Comm'r of Soc. Sec.*, No. 5:21-CV-01314, 2023 WL 3004780, *4, n.1 (N.D.N.Y. Jan. 5, 2023) (citations omitted) ("The ALJ need not specifically write the terms 'supportability' or 'consistency' to meet the articulation requirements in 20 C.F.R. §§ 404.1520c and 416.920c; it is enough that the ALJ applied the proper legal analysis").

Plaintiff relies on the Second Circuit's decision in *Loucks* and subsequent district court cases to support her contention that an ALJ's failure to sufficiently articulate consideration of the supportability or consistency factor should result in a remand. *See* Dkt. No. 9 at 6-7. In *Loucks*, the Second Circuit concluded that the ALJ erred because "the ALJ did not address [an] opinion's supportability or explain how the opinion was consistent with the record, except to conclude that it was." *Loucks*, 2022 WL 2189293, at *2. The ALJ stated only that he found one assessment "somewhat persuasive as it is generally consistent with the evidence of record" and that another opinion was "inconsistent with the evidence of record during the relevant period." *Id.* (citations omitted); *see also* Dkt. No. 9 at 7 (citing *Caroline R. v. Comm'r of Soc. Sec.*, No. 5:21-CV-0360, 2022 WL 4494191, *3 (N.D.N.Y. Sept. 28, 2022); *Jason A. L. v. Comm'r of Soc. Sec.*, No. 5:21-CV-477, 2022 WL 4354363, *2 (N.D.N.Y. Sept. 20, 2022) (emphasis and citation omitted)

("[T]he Second Circuit recently stated in *Loucks* that an ALJ's procedural error in failing to explain how he 'considered the supportability and consistency of medical opinions in the record' does not necessarily preclude the court from affirming the Commissioner's decision").

None of the cases Plaintiff cites require an ALJ to use the words supportability and consistency. *See* Dkt. No. 9 at 6-9. Rather, numerous cases have concluded that an ALJ errs where although the ALJ used the words supportability and consistency, he or she failed to explain the application of those factors to the medical opinions at issue. *See, e.g.*, *Kathleen M. v. Comm'r of Soc. Sec.*, No. 8:20-CV-1040, 2022 WL 92467, *7 (N.D.N.Y. Jan. 10, 2022); *Amber H. v. Saul*, No. 3:20-CV-490, 2021 WL 2076219, *6 (N.D.N.Y. May 24, 2021); *Darla W. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1085, 2021 WL 5903286, *9 (N.D.N.Y. Dec. 14, 2021); *Sarah B. W. v. Kijakazi*, No. 8:21-CV-50, 2022 WL 16734988, *8 (N.D.N.Y. Nov. 7, 2022). Here, ALJ Marcus did the opposite. She did not use the words supportability and consistency when analyzing each of the medical opinions, but she explained whether and to what extent the medical opinions were supported by or consistent with other evidence. *See* Tr. at 24-26.

The Court also agrees that it may review an ALJ's application of the supportability and consistency factors and determine whether such conclusions are supported by substantial evidence without re-weighing the evidence. *See Jason A. L.*, 2022 WL 4354363, at *2. However, in this instance, a re-weighing of the evidence is precisely what Plaintiff asks the Court to conduct. The ALJ discussed whether the medical opinions were supported by a review of records or examination findings. *See* Tr. at 24-26. The ALJ also discussed whether the opinions were consistent with Plaintiff's lack of mental health treatment and records. *See id.*; *see also Ashley E. v. Comm'r of Soc. Sec.*, No. 6:22-CV-299, 2023 WL 6217792, *21 (N.D.N.Y. Aug. 21, 2023) (citations omitted) ("Substantial evidence supports the ALJ's conclusion that plaintiff did not have

9

significant work-related limitations because even when she exhibited signs of depression, she denied impacts on her concentration, and she did not indicate that she was unable to complete tasks because of her mental health. [The p]laintiff's disagreement with the ALJ's conclusion does not warrant remand"). Plaintiff's disagreement with the ALJ's conclusions does not require remand.

Plaintiff argues that the mental health opinions "bear[] some consistency" with each other. Dkt. No. 9 at 8. Dr. Cameron's opined moderate limitation in interacting with others is not consistent with Drs. Juriga or Bhutwala's opined mild limitations. *See* Tr. at 105, 120, 620. The ALJ did not state that Drs. Juriga and Bhutwala's opinions were consistent with each other and inconsistent with Dr. Cameron's opinion. *See id.* at 24-26. However, the ALJ accepted Dr. Bhutwala's opinion and rejected Dr. Cameron's opinion with sufficient explanation. During the consultative examination, Plaintiff reported that one of her symptoms of anxiety and depression was social withdrawal. *See* Tr. at 617-18. During the examination, Plaintiff appeared "a little bit restless" and she had a dysphoric affect; however, she was cooperative with coherent thought processes and good insight and judgment. *Id.* at 618-19. Plaintiff reported that she had friends but only communicated with them by phone at the time. *See id.* at 620. As the ALJ explained, "the examination did not indicate issues with the claimant's ability to interact." *Id.* at 26.

Additionally, there are only three treatment notes pertaining to Plaintiff's mental health in the record. First, on October 30, 2020, Plaintiff had a "[t]elehealth session due to Covid-19 health crisis." Tr. at 624. Plaintiff reported depression and anxiety from a prior relationship and stated that she was "mentally drained from moving 3x during the pandemic." *Id.* at 624-25. On November 18, 2020, Plaintiff explained that she was "angered by the lack of progress with SSI case" and reported conflict with her daughter. *Id.* at 623. The provider noted therapeutic

interventions with decision making, supportive maintenance, and exploring current issues. *See id.* On December 1, 2020, Plaintiff did not show up to her appointment. *See id.* at 622.

As the ALJ stated, "[t]he record lacked mental health treatment or evaluations to demonstrate specific mental restrictions" and Dr. Bhutwala's opinion "was generally consistent with the record given the lack of mental health data and treatment available." Tr. at 17, 25. Although Plaintiff spoke with a licensed social worker about her mental health, the records do not reveal any work-related mental limitations. *See id.* at 622-26. Plaintiff does not dispute this or present any evidence that Plaintiff had more than mild limitations in mental functioning, besides Dr. Cameron's opinion. *See* Dkt. No. 9 at 7-11. Thus, as the ALJ concluded, Dr. Cameron's opined moderate limitations "did not comport with . . . the other evidence in the record." Tr. at 26; *see also Mary M. v. Comm'r of Soc. Sec.*, No. 8:20-CV-1594, 2022 WL 823850, *7 (N.D.N.Y. Mar. 17, 2022) ("It is the province of the ALJ to resolve genuine conflicts in the record") (citing *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002)). Accordingly, the Court finds no error in the ALJ's consideration of the three mental health opinions as the ALJ discussed what, if anything, supported the opinions and whether they were consistent with the record.

Plaintiff also argues that the ALJ erred by failing to consider an additional opinion from Dr. Juriga. *See* Dkt. No. 9 at 8. Dr. Juriga issued two opinions on October 26, 2020. First, he concluded that Plaintiff's initial disability claim was "denied for Insufficient Evidence." Tr. at 100. On the same day, after reviewing Dr. Cameron's consultative examination, Dr. Juriga concluded that Plaintiff had a mild limitation in interacting with others. *See id.* at 105. The ALJ discussed the former, but not the latter. *See id.* at 24. The Commissioner argues that this does not require remand because Dr. Juriga's opined mild limitation "fully supports the RFC and the finding that [Plaintiff's] mental impairments were not severe." Dkt. No. 11 at 10.

11

The ALJ did not cite or discuss Dr. Juriga's second opinion. *See* Tr. at 100, 105. The ALJ's failure to discuss Dr. Juriga's subsequent medical opinion is error. *See Fiducia v. Comm'r of Soc. Sec.*, No. 1:16-CV-1317, 2017 WL 4513405, *4 (N.D.N.Y. Oct. 10, 2017) (citation and quotation marks omitted) ("An ALJ should consider 'all medical opinions received regarding the claimant"). However, "remand is unnecessary '[w]here application of the correct legal principles to the record could lead only to the same conclusion.'" *Christopher T. M. v. Comm'r of Soc. Sec.*, No. 1:20-CV-1553, 2023 WL 2332296, *5 (W.D.N.Y. Mar. 2, 2023) (alteration in original) (quoting *Zabala v. Astrue,* 595 F.3d 402, 409 (2d Cir. 2010)); *see also Fiducia*, 2017 WL 4513405, at *4 (collecting cases) ("This Court and others have recognized that failure to consider or weigh an opinion may be considered harmless error where consideration of that opinion would not have changed the outcome").

The ALJ's error in not discussing Dr. Juriga's opinion is harmless because consideration of the opinion would not change the ALJ's decision and the ALJ's conclusion that Plaintiff had no more than a mild limitation in interacting with others is supported by substantial evidence. The ALJ acknowledged that Dr. Cameron opined that Plaintiff had moderate limitations but concluded that such limitations did not comport with her own examination or other evidence in the record. *See* Tr. at 26. Plaintiff spoke with a mental health professional on two occasions and neither conversation revealed work-related mental limitations. Additionally, Drs. Juriga and Bhutwala concluded that Plaintiff had only a mild limitation in interacting with others, the ALJ expressly relied on Dr. Bhutwala's opinion, and mild limitations support the ALJ's conclusion that Plaintiff did not have a severe mental impairment. *See id.* at 16, 25, 105, 120.

Plaintiff asserts that the error is not harmless because "proper consideration of all of the opinions may have le[]d to a conclusion of limitation not included in the residual functional

capacity finding." *Id.* at 11.  Plaintiff does not specify how the ALJ's RFC would be any different considering Dr. Juriga's second opinion.  *See id.*; *see also Carthron-Kelly v. Comm'r of Soc. Sec.*, No. 5:15-CV-0242, 2017 WL 9538379, *5 (N.D.N.Y. Sept. 25, 2017) (upholding ALJ's RFC because "[a]lthough [p]laintiff asserts that the 2013 MRI and subsequent treatment notations warrant remand, [p]laintiff does not explain how any of the records were contrary to [the] opinion or could be expected to alter the ALJ's RFC determination").  As the ALJ discussed Plaintiff's mental health at every step of her decision, the ALJ did not commit legal error, and her conclusions are supported by substantial evidence, remand is not warranted.

## IV.  CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, the Court hereby

**ORDERS** that the Commissioner's decision denying Plaintiff benefits is **AFFIRMED**; and the Court further

**ORDERS** that Plaintiff's motion (Dkt. No. 9) is **DENIED**; and the Court further

**ORDERS** that Defendant's motion (Dkt. No. 11) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: December 13, 2023
      Albany, New York

Mae A. D'Agostino
U.S. District Judge